**WELLINGTON HOTEL ASSOCIATES**

v.

**William M. MINER, Chairman, Coastal Resources Management Council, et al.**

**87-307-Appeal.**

Supreme Court of Rhode Island.

June 2, 1988.

Gregory L. Benik, Karen A. Pelczarski, Providence, for plaintiff.

Alan Goldman, Jeanne L. Shepard, Goldman & Biafore, Providence, for defendant.

William P. Robinson, III, Stephen M. Prignano, Edwards & Angell, Providence, amicus curiae—Joseph DeAngelis, Speaker of the House of Representatives.

## OPINION

MURRAY, Justice.

This matter is before this court on a petition for certiorari filed by Wellington Hotel Associates (Wellington). The petitioner sought review of a Superior Court order entered on July 7, 1987, denying the petitioner's motion for a preliminary injunction and denying a stay of enforcement of two cease-and-desist orders issued by the respondent, Coastal Resources Management Council (CRMC). We affirm.

The instant dispute centers on the placement of a dock that abuts a time-sharing hotel controlled by petitioner. The petitioner's predecessor in interest applied to the CRMC for permission to erect a floating-dock system. The CRMC is an administrative agency charged with the responsibility of the preservation, protection, development, and where possible the restoration of the state's coastal resources.[1] To that end the CRMC was given the power by the Legislature to issue permits for the erection of docking facilities.[2] The CRMC issued Wellington an assent, permitting it to install the docking system. It merely required that Wellington not deviate from its proposed plan. Later it granted Wellington permission to move the dock some two feet to the south. Coddlington Landing, a public right-of-way owned by the city of Newport, is immediately to the north of the proposed docking facility. Instead of installing the dock according to the plan as originally proposed or as modified by the CRMC at petitioner's request, Wellington installed the facility in a manner such that it obtruded from two feet to six feet to the north of the originally approved location. This deviation, characterized as "de minimis" by petitioner, cut into a twenty-five-foot open channel that leads to Coddlington Landing, the public right-of-way owned by

Newport. The petitioner never reported this deviation to the CRMC.

Because the docking system did not comply with the plan as approved, the CRMC issued a cease-and-desist order to petitioner on November 7, 1985. The order directed petitioner's predecessor in interest to place the docks and pilings in the positions designated in the assent. The docks were removed, but the pilings were left intact.[3]

Council for petitioner submitted an application to the CRMC on June 20, 1986, seeking approval for the dock system "as built." The application was incomplete. In April of 1987 the CRMC requested the information necessary to complete said application. That information was not supplied until June 3, 1987. Meanwhile petitioner, in violation of the cease-and-desist order, again placed the floating-dock system in the water. As a result thereof, the CRMC issued another cease-and-desist order dated May 14, 1987.

On May 28, 1987, during the pendency of its application for approval of the docking system "as built," petitioner brought an action in the Superior Court for a temporary restraining order and stay pursuant to Rule 65 of the Superior Court Rules of Civil Procedure. A hearing was held and the motion was denied. An order was issued denying petitioner's motion for a temporary restraining order and directing petitioner to remove the floating-dock system. The pilings were allowed to remain in place. On June 26, 1987, a second hearing was held, this time on petitioner's request for a preliminary injunction. In an order dated July 7, 1987, the court denied petitioner's application for a preliminary injunction and directed petitioner to remove the floating docks from the water forthwith if petitioner had not already done so.[4]

---

1. See *Sartor v. Coastal Resources Management Council,* 542 A.2d 1077 (1988).

2. General Laws 1956 (1980 Reenactment) § 46–23–6(B), as amended by P.L. 1984, ch. 244, § 1.

3. The petitioner places the cost of moving the pilings to the location designated by the CRMC at $88,000.

4. The parties dispute whether the trial justice had jurisdiction to enforce the two cease-and-desist orders issued by the CRMC. *See* part II, *infra.* The CRMC avers that the parties agreed that petitioner would remove the dock from the water and the two orders issued by the trial justice merely memorialized this agreement. We observe that if the Superior Court lacked the jurisdiction to issue such order, the acqui-

The second order likewise allowed the pilings to remain in place during the pendency of proceedings with regard to the docking system. We note that petitioner apparently did not comply with said orders and remove the docks until October or November of 1987, at which time such docks are typically removed from the water.

Wellington filed a petition for a writ of certiorari and a motion to stay on July 21, 1987. On July 23, 1987, we granted the petition for a writ of certiorari but denied petitioner's motion to stay. Subsequently, in January of 1988, the CRMC denied petitioner's request for approval of the pilings and floating-dock system in the "as built" location.

## I

■ The petitioner alleges that the composition of the CRMC is unconstitutional. Thus, according to petitioner, orders issued thereby are null and void. We do not reach this issue, for we find ourselves controlled by our recent holding in *Easton's Point Association v. Coastal Resources Management Council*, 522 A.2d 199 (R.I.1987). There we refused to entertain a challenge to the CRMC's enabling legislation on identical grounds to those asserted by petitioner today. We held that one who seeks or has acquired rights before an administrative agency such as the CRMC may not, in the same proceeding, attack the validity of the statute that has created the agency. *Easton's Point Association*, 522 A.2d at 201. Unquestionably, petitioner has acquired a right in proceedings before the CRMC, namely, the right to place its docking facility in the water.

The petitioner counters that it did not avail itself of agency action when the CRMC issued cease-and-desist orders against it in that petitioner did not prosecute its statutory right of appeal. Although not explicitly stated, the thrust of its argument appears to be that its action before the Superior Court was separate and distinct from that in which it acquired rights as a result of CRMC action. Thus, it is not precluded under *Easton's Point Association* from attacking the constitutionality of § 46–23–2 on grounds that the composition of the CRMC is violative of article V of the Constitution of Rhode Island.

We decline to permit petitioner to make an end-run around the doctrine enunciated in *Easton's Point Association* through the simple expedient of filing a separate suit. In prohibiting an attack upon the constitutionality of the enabling legislation in "the same proceeding" under which a petitioner derived benefits, we observed that the concept of " 'within the same proceeding' includes judicial review of the administrative action out of which the controversy arises." 522 A.2d at 201. We now hold that a litigant may not collaterally attack the constitutionality of said enabling statute in a separate proceeding, such as that brought by petitioner in the matter now before this court. *Hulne v. International Harvester Co.*, 496 F.Supp. 849 (D.N.D.1980) (court in collateral action refused to entertain an attack upon the constitutionality of workers' compensation statute where employee or family received benefits thereunder).

The petitioner, having acquired a substantive right under the auspices of the CRMC, is required to seek relief by first exhausting its administrative remedies and then petitioning for review pursuant to G.L.1956 (1984 Reenactment) § 42–35–15, as amended by P.L. 1984, ch. 183, § 2. Further review before this court may then be sought pursuant to § 42–35–16, as amended by P.L. 1984, ch. 167, § 4. *Sartor*, at 1079. The petitioner is free to avail itself of its statutory right of appeal. If a litigant forfeits a substantive right by not timely filing a notice of appeal from an unfavorable action by an administrative agency, it will not be heard to complain that it is entitled to intervention by this court by way of a writ of certiorari.

## II

■ The petitioner asserts that the Superior Court lacked jurisdiction to enforce cease-and-desist orders against it. The petitioner correctly observes that when a vio-

escence of all parties would be insufficient to confer jurisdiction upon that court.

lator fails to obey a cease-and-desist order issued by the CRMC, the District Court is the appropriate forum in which to address such violation. Section 46–23–7(a). The petitioner also correctly notes that G.L. 1956 (1969 Reenactment) § 8–2–13 confers upon the Superior Court equitable powers.[5] This grant of equitable powers is subject to two qualifications: (1) the Legislature may limit that court's equitable jurisdiction "as * * * provided by law," § 8–2–13, and (2) the exercise by the Superior Court of equitable jurisdiction may reach other actions arising out of the same transaction or occurrence only if such other actions are joined with the then-pending Superior Court action pursuant to the applicable procedural rules. The petitioner's reliance upon the latter qualification is misplaced, for there was no proceeding pending in another court.

■ We assume without deciding that § 8–2–13 may be interpreted as limiting the Superior Court's jurisdiction to grant the CRMC equitable relief in the instant matter by virtue of the fact that the Legislature "otherwise provided by law" that the CRMC seek enforcement of cease-and-desist orders in the District Court. *See* § 8–2–13. While we might agree, arguendo, that the Superior Court is without original jurisdiction to enforce a CRMC order in a situation in which such action is brought by the CRMC, here the CRMC responded in a forum selected by petitioner. To allow petitioner to invoke the equitable powers of the Superior Court while at the same time fragmenting the dispute-resolution mechanism by requiring the CRMC to go to a separate forum to enforce two cease-and-desist orders willfully violated by petitioner strains credulity. We presume that the Legislature, in enacting the CRMC enabling legislation, did not intend that a

literal interpretation of its language should be adopted when such construction would defeat the evident purpose of said legislation. *Coletta v. Rhode Island,* 106 R.I. 764, 770, 263 A.2d 681, 684 (1970). Thus we hold that the Superior Court may exercise its inherent equitable powers for the purpose of administering full relief to the parties before it in a situation where a party in violation of a CRMC regulation or directive seeks equitable relief in the Superior Court. *See Sparne v. Altshuler,* 80 R.I. 96, 105, 90 A.2d 919, 923, *reargument denied,* 80 R.I. 107, 91 A.2d 676 (1952).

III

The petitioner asserts that the trial justice abused his discretion in refusing to issue a preliminary injunction staying enforcement of two cease-and-desist orders issued by the CRMC. According to petitioner, it would suffer an economic loss that it characterizes as irreparable. The petitioner urges that it would likely succeed on the merits in proving compliance with the CRMC assent.

■ This matter is before this court on a writ of certiorari. In such a situation we generally look only at the face of the record. We reverse only where we find, pursuant to the petition, that the trial justice has committed an error of law. Because we find the instant matter to be one of substantial general interest, *Lynch v. King,* 120 R.I. 868, 391 A.2d 117 (1978); *A. T. & G., Inc. v. Zoning Board of Review of North Smithfield,* 113 R.I. 458, 322 A.2d 294 (1974), we apply the more liberal standard applicable to the denial of a preliminary injunction. Thus we examine whether the trial justice abused his discretion. Absent a showing of abuse, such issue is best left to the sound discretion of the trial

---

5. General Laws 1956 (1969 Reenactment) § 8–2–13 provides:
 "Exclusive jurisdiction of superior court. —The superior court shall, except as otherwise provided by law, have exclusive original jurisdiction of suits and proceedings of an equitable character and of statutory proceedings following the course of equity. If an action is brought in the superior court which represents an attempt in good faith to invoke the jurisdiction conferred by this section, the superior court shall have jurisdiction of all other actions arising out of the same transaction or occurrence, provided such other actions are joined with the action so brought or are subsequently made a part thereof under applicable procedural rules, and the court may retain jurisdiction over such other actions even though the initial action fails for want of equity jurisdiction."

justice. *Gilbane Building Co. v. Cianci,* 117 R.I. 317, 320, 366 A.2d 154, 156 (1976). The movant must be able to make a showing, inter alia, of a danger of irreparable harm and a reasonable probability of success on the merits. *In Re Joseph J.,* 465 A.2d 150, 151 (R.I.1983).

 Applying the aforesaid standard, we find that the trial justice acted well within his discretion in denying petitioner's motion for a preliminary injunction. The trial justice found that petitioner had an adequate remedy at law and expressed a well-founded doubt at petitioner's likelihood of prevailing on the merits. The trial justice correctly articulated and applied the appropriate standard. In so doing, he committed no reversible error.

## IV

 The petitioner asserts that the CRMC acted arbitrarily, capriciously and in excess of its statutory authority in enforcing cease-and-desist orders against it. This is so, according to petitioner, because the deviations from the CRMC assent were trivial and no third-party rights were implicated thereby.

We assume that petitioner's assertion that the deviations from the CRMC assent were de minimis is correct. Unfortunately for petitioner, said assertion was made in the wrong forum. *See* part I, *supra.* The petitioner is first required to seek relief from the CRMC. Chapter 35 of title 42, the Administrative Procedures Act, provides for Superior Court review in situations in which all administrative remedies have been exhausted. One of the grounds for appeal set forth in § 42–35–15 is that substantial rights of a party have been prejudiced because an administrative decision is arbitrary, or capricious or is characterized by an abuse of discretion. *Sartor,* at 1081. The petitioner is free, subject to the procedural strictures of § 42–35–15(b), to file for judicial review. We express no opinion about the merits of such an appeal.

## V

The petitioner urges that the CRMC should be estopped from enforcing the two cease-and-desist orders that it issued to petitioner. This is so, according to petitioner, because fifteen months elapsed between the time that petitioner submitted its application for the docking system "as built" and the time it replaced the docks in the water. The petitioner claims that it relied upon the silence of the CRMC in so replacing the docks.

At the outset we observe that the CRMC issued the first cease-and-desist order because petitioner deviated from the CRMC assent in installing the docks. In balancing the equities, we must consider that petitioner created its own problem in incorrectly placing the pilings to which the docks were anchored and then compounded its problem by submitting an incomplete application seeking approval "as built." While action was still pending on the application, petitioner replaced the docks in the water in violation of the initial cease-and-desist order, causing the CRMC to issue a second such order. Finally, petitioner left the docks in the water during the boating season in violation of both orders and an order issued by a justice of the Superior Court.

 The petitioner's reliance upon the doctrine of estoppel is misplaced. An actor may not base a claim of estoppel in its favor upon its own wrongful acts. *Erlich v. First National Bank of Princeton,* 208 N.J.Super. 264, 303–04, 505 A.2d 220, 241 (1984). The petitioner purports to claim that it relied upon a lag in response time by the CRMC to justify a further violation by it of a cease-and-desist order. This delay was occasioned by petitioner's failure to submit a complete application for approval "as built" to the CRMC. *See Loiselle v. City of East Providence,* 116 R.I. 585, 359 A.2d 345 (1976) (action to terminate employee by municipality not barred on grounds of estoppel where employee had notice of his continuing violation of city ordinance, not withstanding the fact that the city failed to act for almost two years).

The initial cease-and-desist order was predicated upon petitioner's wrongful act. Much of the delay in acting upon petitioner's application was attributable to its own

omissions. In such circumstances we decline to apply the equitable doctrine of estoppel to bar the CRMC from enforcement of the two cease-and-desist orders that it issued to petitioner.

We have considered the other allegations of error asserted by the petitioner and find them to be without merit.

The petition for certiorari is denied, and the writ heretofore issued is quashed. The judgment of the Superior Court is affirmed, and the papers in the case may be remanded to the Superior Court with our decision endorsed thereon.