### In re ADVISORY OPINION TO THE GOVERNOR (DEPCO II).

#### No. 91–289–M.P.

Supreme Court of Rhode Island.

July 2, 1991.

---

Sheldon Whitehouse, Providence, for Governor.

Robin E. Feder, Asst. Atty. Gen. and Julio C. Mazzoli, Sp. Asst. Atty. Gen., Providence, amicus curiae, Dept. of Atty. Gen.

H. Lee Godfrey and James T. McCartt, Susman Godfrey, P.C., Houston, Tex., Bradford Gorham, Gorham & Gorham, Inc., R. Daniel Harrop, Lovett, Schefrin, Gallogly & Harnett, Providence, and Ina P. Schiff, Arlene Violet & Law Associates, Barrington, amicus curiae of affected depositors.

To His Excellency Bruce G. Sundlun, Governor of the State of Rhode Island and Providence Plantations.

We have received from Your Excellency a request for our written opinion in accordance with article 10, section 3, of the Rhode Island Constitution on three specific questions relating to the mechanics of the Rhode Island Depositors Economic Protection Act of 1991 (DEPCO act), P.L.1991, ch. 3, §§ 1–5, which we held constitutional in *In re Advisory Opinion to the Governor (DEPCO)*, 593 A.2d 943 (R.I.1991). These questions bear directly on Your Excellency's constitutional duties as chairman of the Depositors Economic Protection Corporation (DEPCO):

"1. Whether the Depositors Economic Protection Act, Public Laws Chapter 91–003, and specifically R.I. Gen. Laws §§ 42–116–6(i) and (j), authorize the Depositors Economic Protection Corpora-

tion ('DEPCO') to set aside a portion of its funds as collateral to support an indemnity agreement incident to assisting an affected institution to acquire federal deposit insurance (in effect giving the indemnitee priority over all other parties with claims against DEPCO as to that collateral)?

"2. Whether the Superior Court, under R.I.Gen.Laws § 19–15–8(b) or otherwise, has authority to approve a transfer of assets and liabilities to a depository institution, which transfer would require all depositors to assist in the transaction by contributing a portion of their deposits to the acquiring institution, notwithstanding the depositors' priority under R.I. Gen. Laws § 19–15–7?

"3. Whether, if either or both 1. and 2. are answered in the affirmative, those authorizations constitute (i) a law impairing the obligation of contracts in violation of Article I, Section 10 of the constitution of the United States or Article I, Section 12 of the Constitution of Rhode Island, (ii) a taking of private property for a public use without just compensation in violation of Amendment V of the Constitution of the United States or Article I, Section 16 of the Constitution of Rhode Island, or (iii) a denial to any person of equal protection of the laws under Amendment XIV, Section 1 of the Constitution of the United States or Article I, Section 2 of the Constitution of Rhode Island?"

The background history and legislative findings that led to passage of the DEPCO act were set forth fully in our prior opinion and shall therefore not be repeated here. *See In re Advisory Opinion to the Governor*, 593 A.2d at 946–47.

## I

The General Assembly established DEPCO "with the power and authority to acquire all or a portion of the assets of [the failed] financial institutions upon such terms and conditions as the corporation shall deem advisable * * * to aid the prompt payment of the deposit liabilities of said financial institutions to each such de-

positor to the extent and in the manner as the corporation shall determine." General Laws 1956 (1988 Reenactment) § 42–116–2(e), as amended by P.L.1991, ch. 3, § 5. Furthermore, the General Assembly vested DEPCO with "all powers, authority, rights, privileges, and titles that may be necessary to enable it to accomplish such purposes," § 42–116–4(a), and with the power "to do all things necessary and convenient to carry out and effectuate the purposes and provisions of this chapter, including, without limiting the generality of the foregoing * * * (q) * * * such powers granted to corporations organized under chapter 1.1 of title 7 of the general laws [the Business Corporation Act]," § 42–116–5. Pursuant to the Business Corporation Act, DEPCO has the following general powers:

"(5) To sell, convey, mortgage, pledge, lease, exchange, transfer and otherwise dispose of all or any part of its property and assets.

\* \* \* \* \* \*

"(8) To make contracts and guarantees and incur liabilities * * * issue its notes, bonds, and other obligations, and secure any of its obligations by mortgage or pledge of all or any of its property, franchises, and income.

\* \* \* \* \* \*

"(14) To transact any lawful business which the board of directors shall find will be in aid of governmental authority.

\* \* \* \* \* \*

"(18) To have and exercise all powers necessary or convenient to effect its purposes." General Laws 1956 (1985 Reenactment) § 7–1.1–4.

In addition to these traditional corporate powers DEPCO has been granted the express authority:

"(i) to make and enter into indemnity and guaranty agreements; [and]

"(j) to assist any eligible institution in its (the eligible institution's) acquisition of federal deposit insurance * * * whether or not the acquisition of federal insurance is by merger, purchase and assumption, consolidation, liquidation, or conversion. Assistance may include without limitation the pledge or payment of revenues of the corporation, and loans by the corporation to the acquiring institution." Section 42–116–6.

■ Section 42–116–4(a) states that the provisions of this chapter "shall be liberally construed in conformity with the purpose expressed," and § 42–116–34 states that "[t]his chapter shall be construed liberally in aid of its purpose and legislative findings." As we determined in our recent advisory opinion, the DEPCO act serves the legitimate public purpose of providing for the protection of the health, welfare, and safety of the people of Rhode Island by preserving and restoring liquidity to the state's economy. *In re Advisory Opinion to the Governor*, 593 A.2d at 948. In furtherance of that purpose § 42–116–6(i) specifically authorizes DEPCO to enter into indemnity agreements, and § 42–116–6(j) empowers DEPCO to set aside a portion of its funds in support of an indemnity agreement incident to assisting an affected institution to acquire federal deposit insurance.

Giving the indemnitee an interest in a specific set-aside of funds makes the indemnitee a secured creditor, as opposed to the unsecured depositors and general creditors whose priorities are set out in § 42–116–7(b). By definition, therefore, the indemnitee has a priority interest in that collateral to which the other claimants have no rights. We are of the opinion that this set-aside is authorized by the provisions cited above and that the priority of the secured indemnitee has no bearing on the priorities of other unsecured claimants. Question 1 is therefore answered in the affirmative.

II

■ General Laws 1956 (1989 Reenactment) § 19–15–8(b), as amended by P.L.1991, ch. 3, § 1, provides that the Superior Court may approve a transfer of assets for consideration sufficient to pay the liabilities of the corporation and that the consideration shall be distributed in accordance with the preferences and priorities of

§ 19–15–7. Furthermore, § 19–15–8(b) provides:

"If the transferee which assumes deposit liabilities of a corporation entitled to priority under section 19–15–7(a)(3) and/or (4) in a transfer so approved is an institution authorized by law to receive deposits and its deposits, including the assumed deposits of the corporation, are protected by federal deposit insurance, the court on the recommendation of the receiver, may approve such transfer of assets and assumption of liabilities, *in which case the priority claims of depositors whose claims were so assumed will be deemed to have been adequately provided for and the priority granted such claims satisfied.*" (Emphasis added.)

It is clear, therefore, that the preferences and priorities of § 19–15–7 pertain only to a situation in which a failed financial institution is liquidated and its assets distributed accordingly, whereas § 19–15–8(b) contemplates a situation in which the institution is reopened with federal deposit insurance. In the latter situation the General Assembly has provided that the priority claims shall be deemed to have been adequately satisfied, even if the depositors have contributed a portion of their deposits. Section 19–15–8(b). Furthermore, a receiver has the authority to require that depositors contribute a portion of their deposits as a condition of a sale or transfer. *See* §§ 7–1.1–91(d), 19–15–2 (delineating powers of receivers of financial institutions).

The affected depositors contend in their memorandum that § 19–15–7 sets forth a mandatory order of priority requiring that the claims of a class of depositors must be paid in full before the claims of a junior class of creditors are paid. They argue that there is no exemption for federally insured institutions and no implicit waiver of the preferences and priorities of § 19–15–7. We are of the opinion, however, that a contribution by depositors is warranted if the receiver and the court find that the recommended transfer is in the best interests of the institution and its creditors. In support of this opinion we note that other provisions of the DEPCO act allow a reduction in priority distributions in certain circumstances. *See, e.g.,* § 19–15–7(b). Our reading of § 19–15–8(b) therefore compels us to conclude that the Superior Court has the authority to approve a transfer in which the depositors may be required to contribute a portion of their deposits. Question 2 is therefore answered in the affirmative.

### III

 Because we have answered both question 1 and question 2 in the affirmative, we are obliged to respond to question 3. In *In re Advisory Opinion to the Governor, supra,* we held that the DEPCO act is constitutional and that its provisions do not impair the obligation of contracts, do not constitute a taking of private property for a public use, and do not deny to any person the equal protection of the laws. *Id.,* 593 A.2d at 948–50. For the same reasons we find that the two situations contemplated herein are constitutional. First, these two situations do not impair the obligation of contracts and even if they did, "that impairment would be sufficiently justified by the legitimate public purpose of returning funds to deposit creditors and eventually to the Rhode Island economy." *Id.* at 949. Second, these two situations do not constitute a taking of private property for a public use without just compensation because there has been no physical taking and the depositors and unsecured general creditors have no rights in any specific property of the institutions. *Id.* Finally, these provisions do not constitute a denial to any person of the equal protection of the laws because they are rationally related to a legitimate state purpose. *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511, 516–17 (1976); *In re Advisory Opinion to the Governor,* 593 A.2d at 950.

In almost any receivership or bankruptcy proceeding, creditors have limited rights and may expect to receive less than the full

value of their claims. Creating an indemnity agreement or requiring depositors to contribute a portion of their deposits to assist in an acquisition is necessary to the type of transfers contemplated by the DEPCO act. We find that these situations are authorized by the DEPCO act and are therefore constitutional. Question 3 is answered in the negative.