DECISION
Before this Court is Magnum Defense, Inc.'s (Magnum) motion for summary judgment pursuant to Super. R.Civ.P. 56. Allan M. Shine, Esq., as Receiver (Receiver) of Marshall Williams Company (MW) has timely filed an objection to the motion.
 Facts/Travel
In the spring of 1997, Magnum and MW entered into a contract for the production of a certain pilot line of machinery designed to manufacture Magnalon Film. This contract is referred to throughout this litigation as the Basic Ordering Agreement (BOA). MW warranted that this pilot line would meet the requirements of Magnum's proprietary process as specified by Magnum to MW.
In early 1999, Magnum filed a lawsuit against MW in the state court in California. On April 9, 1999, MW removed the case to the Federal District Court for the Central District of California. Subject matter jurisdiction was based upon diversity of citizenship. Magnum's claims against MW were as follows: breach of contract; intentional interference with contractual relations, intentional misrepresentation or fraud; negligent misrepresentation; unjust enrichment; breach of warranty; unfair competition; and racketeering. MW retained two law firms to defend it in that case: its regular counsel Edwards Angell and local California counsel Ginsburg, Stephen, Oringher Richman. Both of these firms conducted discovery on behalf of MW in this California litigation.
On November 19, 1999, this Court appointed Allan M. Shine, Esq. (Shine) as temporary receiver of MW.
Subsequently, on November 23, 1999, Mark Freel (Freel), Rhode Island counsel for MW, faxed the Receiver a letter discussing the California litigation. In this letter, Freel indicated that his firm (Edwards 
Angell) and California co-counsel would be withdrawing from representing MW, since MW had been put in receivership. The letter also contained a warning that failure to participate in this litigation, or to respond to any obligations imposed in connection with same, could result in the entry of a default against the Company. Counsel for MW in the California litigation did indeed move the court to withdraw as MW's counsel. That motion was denied.
On December 10, 1999, this Court appointed Shine as permanent receiver of MW. This Order provides, in part, as follows:
"that the commencement, prosecution, or continuance of the prosecution, of any action, suit, arbitration proceeding, hearing, or any foreclosure, reclamation or repossession proceeding, both judicial and non-judicial, or any other proceeding, in law, or in equity or under any statute, or otherwise, against said Defendant or any of its property, in any Court, agency, tribunal, or elsewhere, or before any arbitrator, or otherwise by any creditor, stockholder, corporation, partnership or any other person, or the levy of any attachment, execution or other process upon or against any property of said Defendant, or the taking or attempting to take into possession any property of said defendant or of which the Defendant has the right to possession, or the cancellation at any time during the receivership proceeding herein of any insurance policy, lease or other contract with Defendant, by any of such parties as aforesaid, other than the Receiver designed as aforesaid, or the termination of telephone, electric, gas or other utility service to Defendant, by any public utility, without obtaining prior approval thereof from this Honorable Court, in which connection said Receiver shall be entitled to prior notice and an opportunity to be heard, are hereby restrained and enjoined until further Order of this Court."
Order Appointing Permanent Receiver, Silverstein, J., 12/10/99, Ex. B. ¶ 13. The Receiver provided Magnum with a copy of this Order, along with a proof of claim form.
Magnum's then-counsel, Kelly Johnson (Johnson), telephoned the Receiver on January 28, 2000. During this conversation, Johnson advised the Receiver that he was having difficulty getting MW's counsel in the California litigation to produce documents.
MW's counsel filed pre-trial documents with the federal court on or about March 3, 2000.
Four days later, on March 7, 2000, Magnum filed its claim in this Receivership in the amount of $14,038, 183.
Seventeen days later, on March 24, 2000, trial began. MW's California counsel was present during each of the eight days of trial. Additionally, MW's counsel made objections to the introduction of evidence and exhibits, made offers of proof, as well as arguments to the court regarding the proof and evidence offered by Magnum. The trial concluded on April 14, 2000.
On September 7, 2000, the federal district court judge entered judgment against MW in Magnum's favor in the amount of $4,230,000 in compensatory damages and $1,000,000 in punitive damages, plus costs and interest. Magnum subsequently notified the Receiver of the judgment and sent him a copy of same.
The following month, in October 2000, Magnum filed an application for an award of attorney's fees and costs against MW. MW's counsel then filed written opposition to Magnum's post-trial motion. MW's counsel appeared at the hearing on those motions. On November 20, 2000, the court granted, in part, Magnum's application and awarded Magnum an additional $51,209 in attorney's fees and costs. This additional amount increases the total amount of the judgment to $5,281,209.
No appeal of the federal judgment was filed. The judgment was entered in California in September 2000, and registered in Rhode Island and South Carolina in December 2000.
The Receiver filed a formal objection to Magnum's claim in January 2002.
Magnum has timely filed a motion for summary judgment. Magnum advances a number of arguments in support of its summary judgment motion, the most significant of which is that the judgment in the California litigation is res judicata as to Magnum's claims against MW. Magnum bolsters its position primarily on California law principles, which give preclusive effect to a federal diversity judgment on the merits. In addition, Magnum maintains that the record is replete with evidence that MW fully participated in the trial in the California litigation. Moreover, Magnum contends that the Receiver was aware of the California litigation, as he had been advised by Edwards Angell in a November 23, 1999 letter. Magnum argues further that any argument by the Receiver that the Receiver is not bound by the California judgment based on lack of privity is irrelevant. In any event, Magnum maintains that the Receiver is estopped from challenging the preclusive effect of the judgment, since no appeal from that judgment was ever filed. Accordingly, Magnum argues that the Court should grant its motion for summary judgment as to the allowable amount of its claim in the Receivership.
The Receiver, on the other hand, maintains that summary judgment should not be granted. The Receiver also advances a variety of arguments, the most significant of which is that Magnum's federal court judgment is not entitled to preclusive effect in MW's Receivership. Moreover, the Receiver points out that Full Faith and Credit principles do not require states to give full faith and credit to federal court judgments. The Receiver also argues that he was not a party to Magnum's federal diversity suit against MW, nor was he MW's privy, so as to be bound by Magnum's federal court judgment against MW. Furthermore, the Receiver contends that he is not bound by Magnum's federal court judgment under federal Constitutional Due Process Requirements and California law since he did not have a full and fair opportunity to litigate the merits of Magnum's federal diversity suit. In this regard, the Receiver explains that he was stripped of any opportunity to litigate since he was not a party to that suit. Finally, the Receiver asserts that Magnum violated this Court's Order appointing the Receiver and the Injunction therein. It follows, argues the Receiver, that violation of a court order should not be rewarded. Accordingly, the Receiver asserts this Court should deny Magnum's motion for summary judgment with prejudice, and should hold as a matter of law that Magnum's federal court judgment has no preclusive effect in MW's receivership.
 Standard of Review
Super. R.Civ.P. 56 empowers a trial justice, upon proper motion, to enter summary judgment in favor of the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Thus, in a proceeding for summary judgment, the court must "examine the pleadings and affidavits in the light most favorable to the nonmoving party to decide whether an issue of material fact exist[s] and whether the moving party [is] entitled to summary judgment as a matter of law." Buonnanno v. Colmar Belting Co., Inc., 733 A.2d 712, 715 (R.I. 1999) (citing Textron, Inc. v. Aetna Casualty and Surety Co.,638 A.2d 537, 539 (R.I. 1994)). The party opposing a motion for summary judgment may not merely rely upon mere allegations or denials in his or her pleadings. Small Business Loan Fund v. Loft, 734 A.2d 953, 955 (R.I. 1998) (citing Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998)). Rather, "[a] party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material fact and cannot rest on the allegations or denials in the pleadings or the conclusions or on legal opinions." Macera Brothers ofCranston, Inc. v. Gelfuso Lachut, Inc., 740 A.2d 1262, 1264 (R.I. 1999) (citing Manning Auto Parts, Inc. v. Souza, 591 A.2d 34, 35 (R.I. 1991)). If the opposing party cannot establish the existence of a genuine issue of material fact, summary judgment must be granted. Grande v.Almac's, Inc., 623 A.2d 971, 972 (R.I. 1993).
Res Judicata
Magnum maintains that the judgment in the California litigation is res judicata as to Magnum's claims against MW. Magnum bases its argument on the premise that federal law governs the preclusive effect of a federal district court's judgment in a state court. Magnum further contends that if the federal district court's judgment was based on the exercise of diversity jurisdiction, the question is whether the law of the forum state (California) would accord preclusive effect to the judgment. SemtekInt'l. Inc. v. Lockheed Martin Corp., 531 U.S. 497 (2001).
In view of Semtek, Magnum directs this Court to a variety of cases from California which articulates the position of the forum state on this issue; that is, a properly entered judgment has res judicata effect and therefore preclusive effect. See Balasubramanian v. San Diego CommunityCollege Dist., 95 Cal.Rptr.2d 837 (2000); Butcher v. Truck Ins.Exchange, 92 Cal.Rptr.2d 521 (2000); Acuna v. Regents of the Univ. ofCal., 65 Cal.Rptr.2d 388 (1997).
Magnum also argues that the Full Faith and Credit Clause of the Constitution requires that full faith and credit be given to Magnum's federal court judgment in the instant case. In support of this argument, Magnum directs this Court to a United States Supreme Court case, which holds that where a suit is pending against a debtor in another state at the time a receiver is appointed for the debtor, that suit may be prosecuted to judgment and a judgment so obtained establishes, as against the receiver, the rightful amount of the claim in the receivership.Morris v. Jones, 329 U.S. 545 (1947). Magnum, accordingly, concludes that since the judgment in the California litigation should be given full faith and credit, summary judgment should be granted.
The Receiver, however, correctly points out that neither the Full Faith and Credit Clause of the Constitution, nor Morris v. Jones requires states to give full faith and credit to federal court judgments. Id. InMorris, the petitioner brought suit against an insurance company in Missouri state court. Id. Before judgment entered, the insurer was placed into receivership in an Illinois state court. Id. Subsequently, the petitioner proceeded to judgment in the Missouri court and filed a proof of claim in the Illinois receivership. Id. The Illinois state court issued an order disallowing the claim and on appeal the Illinois
Supreme Court affirmed. On appeal to the U.S. Supreme Court, the question presented was whether the Illinois court was obliged to give full faith and credit to the Missouri judgment in the Illinois receivership. Id. The Court concluded that the rule of the Full Faith and Credit Clause is applicable in this matter; that is, a state must give the judgment of another state's court the credit such judgment enjoys in the rendering state, even though the judgment would not be enforced in the receiving state. Id at 550-51. Accordingly, the Court found that the Missouri judgment should be honored by the Illinois court. Id.
In the case at bar, on the other hand, Magnum is asking this Court to honor a federal court diversity judgment, rather than another state court judgment. Morris, then, will not be of use to Magnum in this regard, as it is not applicable to the instant matter.
The Supreme Court rendered its pronouncement with respect to the Full Faith and Credit Clause as it pertains to state court judgments in Morrisv. Jones in 1947. Id.
More recently, in 2001, the Supreme Court examined whether federal court diversity judgments should be afforded full faith and credit by state courts. Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497
(2001). In Semtek, the Court held that if a federal district court's judgment was based on the exercise of diversity jurisdiction, the forum state's law on res judicata will determine whether the federal diversity court's judgment has preclusive effect. Id. The federal common-law preclusion rule of Semtek, then, requires applying the preclusion law of the state in which the federal diversity court sits.
Id. at 508.
In the instant matter, Magnum obtained a federal court diversity judgment against
MW in the Federal District Court for the Central District of California. At the crux of the instant litigation, Magnum is seeking to enforce this federal court judgment in the Rhode Island state court receivership. Following Semtek, this Court finds that as a matter of law, California preclusion law will govern whether preclusive effect will be given to Magnum's federal court judgment.
Turning to California law, then, Magnum offers this Court several California court cases which uniformly hold that a properly entered judgment has res judicata effect and therefore preclusive effect. SeeBalasubramanian v. San Diego Community College Dist., 95 Cal.Rptr.2d 837
(2000); Butcher v. Truck Ins. Exchange, 92 Cal.Rptr.2d 521 (2000); Acunav. Regents of the Univ. of Cal., 65 Cal.Rptr.2d 388 (1997). InBalasubramanian, the plaintiff claimed that the Superior Court of San Diego County erred in applying the doctrine of res judicata to bar her state claims of defamation, infliction of emotional distress, and interference with business relationships. Balasubramanian,95 Cal.Rptr.2d 837. The Superior Court found that the state court claim of breach of contract was barred by a previous federal court judgment, in which plaintiff had unsuccessfully brought suit in federal district court for employment discrimination. The Court of Appeal of California ultimately affirmed the Superior Court and explained that "Where, as here, an action is filed in a California state court and the defendant claims the suit is barred by a final federal judgment, California law will determine the res judicata effect of the prior federal court judgment on the basis of whether the federal and state actions involve the same primary right." Id at 846 quoting Gamble v. General FoodsCorp., 280 Cal.Rptr. 457 (1991). The court went on to find that since the determinative factor in applying the primary right theory was the harm Balasubramanian suffered, and the harm alleged in both federal and state actions was having been rejected for the position of assistant professor, preclusive effect was properly afforded to the federal court judgment. Balasubramanian, 95 Cal.Rptr. 837.
Applying California principles of res judicata, preclusive effect and primary right theory, this Court finds in the case at bar that Magnum's federal court diversity judgment in the California litigation is res judicata as to Magnum's claims against MW in the Rhode Island state court receivership. Here, the same primary right is at stake. In the federal court proceeding, Magnum sued MW for a variety of state claims, including breach of contract and fraud. Judgment entered against MW and in favor of Magnum. In the present action, Magnum is seeking to enforce this very same judgment. This Court concludes that the federal court diversity judgment should in fact and in law be enforced.
 Privity and Necessary Parties
The Receiver next argues that the federal court judgment has no effect on him since he was not a party to the California litigation and has never been in privity with any party to the action. As such, the Receiver asserts, he did not have a full and fair opportunity to litigate the merits of Magnum's federal suit because he was not a party to that suit. Accordingly, the Receiver contends that this Court should deny Magnum's motion for summary judgment.
In turn, Magnum responds that the argument by the Receiver that privity principles govern this matter is irrelevant. Specifically, Magnum points out that it is seeking to exercise its rights to collect on a claim against MW's assets, rather than against the Receiver personally. Thus, Magnum asserts that the Receiver was not a necessary party to the California litigation. Moreover, Magnum argues that not only did MW fully participate in the California litigation, but that the Receiver was well aware of all proceedings therein, throughout all stages of the litigation. Magnum went on to supply the Court with a detailed litany of the extent to which MW participated, along with specific references to notes made by the Receiver, indicative of his recognition that a judgment could be entered by the federal court judge in the California litigation. (Magnum's Mem. of Law Ex. 8).
This Court finds that the Receiver's reliance on privity and party principles is indeed misplaced. Magnum, as articulated by its counsel, is seeking to exercise its rights to collect on its claim against MW's assets. Magnum is not seeking to exercise any rights, if any were to exist, to collect against the Receiver personally. The Receiver's arguments regarding privity and necessary parties would fit squarely within a factual framework whereby the Receiver, personally, was the target of a collection endeavor. Since that is clearly not the case in the instant matter, the Receiver's argument must fail.
This Court also finds that the argument by the Receiver that he did not have a full and fair opportunity to litigate the merits of Magnum's federal suit is belied by the undisputed facts. First, the record is replete with evidence illustrating MW's participation in the California litigation. At the outset, this Court notes that MW removed the case, originally filed in state court, to the Federal District Court for the Central District of California. MW was represented by regular counsel, Edwards Angell, as well as local California counsel, Ginsburg, Stephen, Oringher Richman. Both of these firms conducted discovery on behalf of MW in this California litigation. Both counsel prepared and filed pre-trial documents with the California court. Oringher,
MW's California counsel, attended every day of the eight-day trial. MW's counsel made objections to the introduction of evidence and exhibits. MW's counsel made offers of proof, and made arguments to the court regarding proof and evidence offered by Magnum. MW's counsel was given opportunities to call witnesses and cross-examine witnesses. Subsequent to the trial, and judgment in favor of Magnum and against MW, Magnum filed an application for an award of attorney's fees and costs against MW. Oringher, again as counsel for MW, filed written opposition to Magnum's application. MW's counsel then appeared at a hearing regarding the application. In sum, this Court concludes that evidence in the record demonstrates that MW fully participated in the California litigation.
Secondly, this Court finds that the Receiver was aware of the California litigation. The evidence indicates that Mark Freel, MW's Edwards Angell counsel, advised the Receiver of the potential consequences of the California litigation in a letter dated November 23, 1999. This letter states, in pertinent part:
"As a result of economic circumstances at the Company, and your appointment as Temporary Receiver, we will be filing a motion, along with our co-counsel, to withdraw from any further representation of the Company . . . . You should be aware that under the Local Rules of this Court, a corporation is not permitted to proceed pro se or otherwise represent itself in litigation. Moreover, you and the Company should be aware that a failure to participate in this litigation, or to respond to any obligations imposed in connection with same, could result in the entry of a default against the Company, as well as a waiver of the claims made against the Company's Counterclaim."
The evidence also indicates that on January 28, 2000, Magnum's counsel spoke with the Receiver on the telephone. Magnum's purpose in this discussion was to enlist the assistance of the Receiver in obtaining certain documents from MW's counsel in the California litigation. Magnum asserts, and the Receiver does not dispute, that the Receiver agreed to help in the effort to make the company records available to Magnum. Magnum also asserts, and the Receiver does not dispute, that the Receiver told Magnum's counsel that "keeping the MW attorneys in the case at that time `only slows him . . . down on his effort to get a judgment and records' in the California litigation." (Pet.'s Mem. of Law at 6.) Moreover, the Receiver's own notes memorializing this conversation demonstrate an awareness of the ongoing California litigation. Given the evidence in the record — that MW fully participated in every stage of the California litigation, in addition to the evidence that the Receiver was entirely aware of both the existence and the ramifications of the California litigation — this Court is satisfied that the Receiver had a full and fair opportunity to participate in the California litigation. The opportunity to participate was made known to the Receiver; the Receiver was aware of the opportunity, and yet saw fit not to participate. Notwithstanding this decision on the part of the Receiver, the Receiver cannot later assert the defense of lack of opportunity. Rather, the Receiver failed to take advantage of the opportunity which may have been unappealing, but yet available. This Court finds that the Receiver's contention that MW's federal court judgment cannot bind the Receiver because he did not have a full and fair opportunity to participate is unavailing.
December 10, 1999 Order Appointing the Receiver
In the alternative, the Receiver argues that by proceeding with litigation in California, Magnum violated this Court's order of December 10, 1999 appointing the Receiver. On the one hand, the Receiver contends that the order contained an injunction, restraining Magnum from prosecuting its federal diversity suit against MW. The Receiver concedes, however, that this Court lacks the power to enjoin the prosecution of Magnum's federal diversity suit. Donovan v. City ofDallas, 377 U.S. 408 (1964). The Receiver's remaining argument is that Magnum was still obligated to come before this Court to seek relief from, or to seek modification of the injunction before continuing with and prosecuting its federal diversity suit against MW to judgment. In support of this argument, the Receiver relies on Oregon ex rel. Mix v.Newland, 560 P.2d 255 (1977). The Receiver urges this Court to find that since Magnum never obtained relief from this Court's injunction against the prosecution of its federal diversity suit against MW, that the Receiver is not bound by Magnum's federal court judgment.
In response, Magnum extrapolates from the Receiver's concession, and maintains that "The United States Supreme Court has unequivocally held that a state court may not enjoin a federal court or litigant from commencing, or continuing, in personam litigation in a federal district court." (Pet.'s Mem. of Law at 8.) In this regard, Magnum relies onGeneral Atomic Co. v. Felter, 434 U.S. 12 (1977). Accordingly, Magnum argues that prosecution of the California litigation could not be against this Court's Order.
This Court finds the December 10, 1999 Order appointing the Receiver was not, and indeed could not have been, meant to bar Magnum from continuing litigation in the federal district court in California. The U.S. Supreme Court has ruled, and the Receiver agrees, that this Court would not have had the power to bar such in personam litigation. Given the rule articulated by the Supreme Court, this Court finds that it was not necessary for Magnum to seek relief from the Order, as the Receiver suggests. Such an exercise would have been totally unnecessary, as the Supreme Court has already vested Magnum with the right to proceed in California. This Court is satisfied that Magnum did not violate this Court's Order, and that the Receiver's argument in this regard is without merit.
 Conclusion
Summary judgment will be granted when this Court finds that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, as well as a review of the other materials properly before this Court, this Court finds there to be no genuine issues of material fact. Furthermore, this Court holds as a matter of law that Magnum's federal court diversity judgment has preclusive effect as to its claims against MW. Therefore, Magnum is entitled to summary judgment. Magnum's claim is allowed in the full amount of the judgment .
Counsel shall submit an appropriate order and judgment for entry.